IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SHERRIE LEMCOOL,

    Plaintiff,

vs.                          Case No. 4:09cv376-RH/WCS

ASSISTANT WARDEN POOL,
et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Defendants filed a motion for summary judgment, doc. 53, supported by several additional exhibits, doc. 54. Plaintiff, a *pro se* prisoner, was advised of her obligation to respond, doc. 55, and Plaintiffs response has now been filed. Doc. 62. The motion is ready for a ruling.

In her third amended complaint, doc. 18, Plaintiff contends that her First and Fourteenth Amendment rights have been violated because of rules concerning possession of Tarot cards, opportunities for Sabbat and Esbats, and refusal to give her a three-ring binder for her personal religious writings. She also suggests she is treated differently because of her Wiccan religion, and alleges that Christian inmates are permitted to have three-ring binders. *Id.*

Defendants contend that the claim concerning worship opportunities (Sabbat and Esbats) was not properly exhausted as required by 42 U.S.C. § 1997e(a).  Doc. 53, p. 8.  Further, Defendants assert that metal bindings are not permitted pursuant to Departmental rules, and that denial of a three-ring metal binder does not substantially burden the practice of Plaintiff's religion.  *Id.*, at 10-11.  Defendants also state that inmates may store Tarot cards in the chapel to use under the supervision of the chaplain, but note that Plaintiff has not had Tarot cards sent to her Correctional Institution for storage in the Chapel Library.  *Id.*, at 12-13.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case.  Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial.  *Id.*  An issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All

reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts.  Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Matsushita Elec. Industrial Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano, 129 S.Ct. at 2677.

   "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

   Local Rule 56.1(A) provides that a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement constitutes grounds for denial of the motion."  The Local Rule also provides that the statement "shall reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied upon material fact, by page,

paragraph, number, or other detail sufficient to permit the court to readily locate and check the source."  The Local Rule provides that the party opposing the motion shall serve a similar statement of material facts as to which the party contends there is a genuine issue to be tried, using the same format.  Facts set forth in Defendants' statement will be deemed admitted (if supported by the record evidence) unless controverted by Plaintiff's statement.

**The relevant Rule 56(e) evidence**[1]

Plaintiff is a prisoner incarcerated within the Florida Department of Corrections and currently confined at Lowell Correctional Institution in Ocala, Florida.  Doc. 53, Ex. 1.  Plaintiff is a medium custody prisoner.  *Id.*  On April 10, 2009, Plaintiff submitted an Inmate Request to the Chaplain at her institution asking whether, as a Wiccan inmate, she could have Tarot cards.  Doc. 53, Ex. 2 (doc. 53-2), p. 1.  Defendant Leslie is the chaplain at Lowell C.I. and advised Plaintiff that pursuant to Administrative Rules, inmates cannot possess Tarot cards, but they "are permitted to be used under the supervision of the chaplain and stored in the chapel."  *Id.*

Plaintiff filed another Inmate Request on April 29, 2009, stating that she understood the rule to permit a case by case evaluation of an inmate's request for Tarot cards.  Doc. 53, Ex. 2 (doc. 53-2), p. 2.  Plaintiff also requested that the Chaplain schedule her for at least one hour a day for sixty days in the Chapel so she could acquaint herself with a new Tarot deck.  *Id.*  Plaintiff also asked to be scheduled initially

---

[1] Plaintiff provided a response, doc. 62, in opposition to Defendant's motion. Plaintiff's argument has been considered, and her exhibits reviewed. Citation to the exhibits relevant to the summary judgment motion are to Defendants' submission of the exhibits as they are more readily identifiable and pin-point citations are possible. Plaintiff did not provide an affidavit as evidence.

Case No. 4:09cv376-RH/WCS

for two hours every six days to use the Tarot deck for the lunar cycle of Esbats and on other days for the solar cycle of Sabbats.  *Id.*  Chaplain Leslie advised Plaintiff that the rule on Tarot cards had recently been changed to require Chapel storage and supervision and no "case by case decision is involved."  *Id.*  Chaplain Leslie said that Tarot cards may be sent to the Chapel and she could contact chaplaincy at any time to see if a set had been donated.  *Id.*  Chaplain Leslie also explained that during normal working hours, Plaintiff could get a pass and come to the Chapel or Chapel library as any other inmate.  *Id.*  Finally, Plaintiff was advised that at that time, the Institution had "no qualified volunteers to be present" for Plaintiff's requested dates for Holy Sabbats.  *Id.*

On May 26, 2009, Plaintiff submitted an informal grievance asking to keep a Tarot card deck in her personal possession or stored in the Chapel subject to the schedule of use she previously suggested.  Doc. 53, Ex. 2 (doc. 53-2), p. 4.  Plaintiff explained that a Tarot deck would not be donated because "Wiccans do not even share a Tarot deck within a group" as it is a "personal sacred tool that is kept wrapped in a scarf" and kept in a quiet place.  *Id.*, at 4.  Plaintiff also complained that activities are not scheduled for Wiccan inmates and she cannot practice any remembrance activities related directly to [her] Wiccan beliefs . . . ."  *Id.*, at 5.  She said that "currently there are no qualified volunteers to be present for the observance requirements for the Wicca approved Holy Sabbat and Esbat accommodations in the Religion Technical Guide for the Wicca faith."  *Id.*, at 5.  Plaintiff's grievance was denied and Plaintiff advised that she could have her own set of Tarot cards, "but they must be maintained at the chapel."  *Id.*,

at 4. Plaintiff was advised she could use the Chapel "as any other inmate for private study." *Id.*

Plaintiff submitted a formal grievance on June 11, 2009, requesting to use Tarot cards and requested "open schedule time and space availability to aquaint [sic] [herself] with each card in the Tarot Deck and all Holy Sabbats and Esbats." Doc. 53-2, p. 8. Plaintiff complained that she did not have "fair access to program space for . . . conducting religious activities with [her] Tarot deck." *Id.*, at 7. Again, she listed the dates of "special significance" for the Esbats and Holy Sabbats. *Id.* Plaintiff asked for "authorized clearance to order a Tarot deck for personal use as the informal grievance was denied in full . . . ." *Id.*, at 8. Defendants Chaplain Leslie and Assistant Warden Poole responded to the grievance, stating that the response to the informal grievance "adequately" addressed the issue. *Id.,* at 9. The grievance was deemed "moot and" was "returned without processing" although Plaintiff was advised she could obtain further administrative review by submitting an appeal. *Id.*

On July 4, 2009, Plaintiff filed a four-page appeal of the denial of her formal grievance. Doc 53, Ex. 3 (doc. 53-3). Plaintiff complained that she could not possess Tarot cards. *Id.* Furthermore, she requested "open schedule time and space availability" for dates of special significance and listed the specific dates, explaining their significance. *Id.*, at pp. 1-2. Plaintiff said that "the eight festival cards and four seasonal suits in a Tarot deck can be used for solitary remembrance [sic] worship in absense [sic] of qualified volunteers for the Wiccan eight Holy Sabbats." *Id.*, at 2. Plaintiff also explained that "Esbat is the name given to the regular workings of a Wiccan, as opposed to the big seasonal celebrations known as Sabbats." *Id.*, at 3. She said that

"Esbat is used for Wiccan spiritual growth" and provided the dates for those occasions. *Id.*, at 3-4.  Plaintiff's requested remedy was: "Authorization of clearance to order a Tarot deck with an understanding of whether or not I will have extra open schedule time and space availability to acquant [sic] [herself] with a new Tarot deck, or" that she could keep the deck "in [her] living area to do so, an open schedule time and space availability for [her] Wiccan Sabbats and Esbats as listed above for remembrance worship and self help study with [her] Tarot deck."  Doc. 53-3, p. 4.  The appeal was denied by Defendant W.S. Smith, Chaplaincy Administrator in Central Office, and Celeste Kemp, the Secretary's Representative, finding the response Plaintiff "received at the institutional level" was reviewed and "found to appropriately address the concerns that [Plaintiff] raised at the Institutional level as well as the Central Office level."  *Id.*, at 5.

      Defendant Chaplain Leslie provided an affidavit in which he explained that "Lowell C.I. has the largest population of female prisoners of all the correctional institutions in the State of Florida."  Doc. 53, Ex. 4 (doc. 53-4), p. 1.  Between the work camps, the annex, and the main unit, there are approximately 3,000 inmates housed at Lowell C.I.  *Id.*  "There are currently eight (8) inmates at Lowell C.I. Main United (including [Plaintiff]) who have designated their religious affiliation as Wiccan."  *Id.*  Two other inmates at the work camps are also Wiccan followers.  *Id.*  The Chaplaincy staff members try to accommodate as many inmates as possible who desire access to the Chapel and Chapel library, but are constrained by staffing shortages, space limitations, and administrative responsibilities.  *Id.*  Thus, "Chaplaincy at Lowell C.I. relies heavily upon qualified volunteers to conduct group services."  *Id.*

The Chapel library at Lowell is open weekdays from 9:00 - 10:45 a.m. and from 1:30 - 3:30 p.m. for inmate personal use. Doc. 53, Ex. 4 (doc. 53-4, p. 2).[2] The Chapel library can hold 25 people at one time, and is furnished with several tables, chairs, book shelves, four small televisions with media players, and cassette tape players. *Id.* The use of Tarot cards may take place in the Chapel library during this time. *Id.* To ensure as many inmates as possible may have access to the Chapel Library for personal use, a system was implemented two yeas ago permitting inmates to come to the Chapel library once during the work week based on dormitory assignment. *Id.* Each dormitory is assigned a day of the week, and an inmate may come to the Chapel Library on the day of the week assigned to her dormitory. *Id.* The dormitories are provided a monthly notice with the weekly schedule. *Id.*

Defendant Leslie's recollection is that Plaintiff came to the Chapel library just once in 2010. Doc. 53, Ex. 4 (doc. 53-4, p. 2). Plaintiff has not had any Tarot cards sent to Lowell C.I. for storage in the Chapel Library. *Id.* Defendant Leslie asserts he has not denied any request by Plaintiff "to store personal tarot cards in the Chapel Library . . . ." *Id.* He adds, however, that he has "denied her grievance requesting tarot cards *conditioned* on either personal possession or storage in the Chapel subject to use on an 'open schedule time and space' basis." *Id.* Plaintiff's property list shows Plaintiff had a Book of Shadows, which consisted of papers only. Doc. 53, Ex. 7 (doc. 54-3, p.

---

[2] Defendant Leslie's affidavit provides the times for personal use as cited above in the text. However, Appendix A attached to the affidavit shows the times as: Monday through Friday: 9:00 - 11:00 a.m., and on Monday through Thursday afternoons: "Call - 3:30 p.m." Doc. 53-4, p. 5. The Chapel Library is closed on Saturday and Sunday. All inmates must have a pass to come to the Chapel Library. *Id.*

1). Plaintiff is permitted to have a Book of Shadows, subject to Departmental rules, but she cannot have a three-ring binder in which to keep the materials. *Id.*

No inmates at Lowell C.I. have possession, or are authorized to have metal three ring binders. Doc. 53, Ex. 4 (doc. 53-4, p. 2). A volunteer for a program at Lowell C.I. called "Story Line" requested permission to distribute "Story Line Books for Graduates." *Id.* Permission was given, but prison officials did not realize that the "books" would be contraband because they had metal three ring binders. *Id.* When Plaintiff grieved the issue of the binders, prison administrators were alerted to the Story Line binders given out by the volunteer and Chaplaincy immediately collected the binders. *Id.*, at 2-3. Defendant Leslie states in his affidavit that there was no "intention to afford the inmates in Story Line a special privilege outside of the rules," and this was a simple misunderstanding. *Id.*, at 3.

Pursuant to FLA. ADMIN. CODE R. 33-602.201(16)(b)(2), certain religious items are deemed permissible for individual worship or group worship, but "pose a security risk when allowed in an inmate's cell or dorm." Doc. 54-1, p. 7. Wiccan inmates within the Department of Corrections may use Tarot cards "under the supervision of the Chaplain" and the cards must "be stored in the chapel." *Id.*

Pursuant to FLA. ADMIN. CODE R. 33-501.401(17)(a), metal bindings such as paperclips, binder clips, and other metal fasteners (except staples) are not allowed in "the following types of housing units: death row, administrative or disciplinary confinement, close management, maximum management, and mental health inpatient housing including transitional care units, crisis stabilization units, and correctional

mental health institutions." Doc. 53, Ex. 6 (doc. 54-2, p. 6). Spiral bindings are not allowed either. *Id.*

**Analysis**

**Exhaustion**

The Prison Litigation Reform Act mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement of § 1997e(a) is mandatory, Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998), but is not jurisdictional. Bryant v. Rich, 530 F.3d 1368, 1374 n.10 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008) (citing Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2392, 165 L.Ed.2d 368 (2006)). There is no discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing. Alexander, 159 F.3d at 1325; *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons). The Court may not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000), *citing*

Alexander, 159 F.3d at 1323.  Even where an inmate seeks only monetary damages in a civil rights case, she must complete the prison administrative process if it could provide some sort of relief on the complaint although no money could be given administratively.  Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001).  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007)[3].

A prisoner must also comply with the process set forth and established by the grievance procedures.  See Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).  In other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA exhaustion requirement requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements).  If a grievance is initially denied as untimely, a prisoner must appeal the denial of the grievance.  See Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999) (noting Georgia's inmate grievance procedures allow "the grievance coordinator to waive the time period for filing a grievance if 'good cause' is shown"); Bryant v. Rich, 530 F.3d at 1373.  However, it one claim is unexhausted, the Court may separate out that claim and proceed only with those claims that were exhausted.  Brown, 212 F.3d at 1206, n.1;

---

[3] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

Jones, 549 U.S. at 223, 127 S.Ct. at 925 (rejecting a "total exhaustion rule" and requiring dismissal only of those unexhausted "claims," not an entire "action.").

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008), *relying on* Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007) ("Jones does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative defense prior to Jones have all put the burden of proof on defendants, to the extent that they addressed the issue.").

Factual disputes concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1373-74, 1376.  Even though evidence may be presented to support or refute a contention that a prisoner has not exhausted the grievance process, exhaustion is a "matter in abatement and not generally an adjudication on the merits;" thus, it should be raised and treated as a motion to dismiss, not a summary judgment motion. *Id.*, at 1374-75.  The Court must assure that a prisoner-plaintiff has fair notice of the opportunity to develop a record to show he or she has exhausted available remedies.

When motions to dismiss are based on issues not enumerated under Rule 12(b), then Rule 43(c) governs "which permits courts to hear evidence outside of the record on affidavits submitted by the parties."  Bryant, 530 F.3d at 1377, n.16.

Plaintiff presents three discrete claims in this case: (1) possession of Tarot cards; (2) opportunities for Sabbat[4] and Esbats; and (3) refusal to provide her with a three-ring binder for her religious writings.  Defendants presented Plaintiff's grievances as exhibits to the motion for summary judgment.  Doc. 53.  Defendants acknowledge that Plaintiff exhausted her claims concerning the Tarot cards and binders, but assert that "Plaintiff's claims for *group* worship services and activities are different from what Plaintiff administratively exhausted, to wit:  her request for tarot cards *conditioned* on either personal possession or storage in the Chapel subject to her *personal* use and prerogatives on an 'open schedule time and space' basis."  Doc. 53, pp. 8-9.

The argument is not persuasive.  Plaintiff raised the argument that she was not provided opportunities to celebrate Sabbat and Esbats, and in each level of the grievance process, she notified prison officials of the various dates for these Holy Days.  Plaintiff also complained that she should be able to participate in these activities with a Tarot deck in "solitary" remembrance worship, even without a qualified volunteer for the eight Holy Sabbats, and she requested time and space for such worship.  Since Plaintiff presented her claims concerning Sabbat and Esbats in the grievance process, the motion to dismiss this claim (as presented within the motion for summary judgment) should be denied.

---

[4] Sabbats are festivals and Wiccan followers generally celebrate eight Sabbats to mark the annual cycle of Earth's seasons.  An Esbat is a coven meeting in Wicca.

**Three Ring Binders**

Defendants contend that Plaintiff has not demonstrated that her religious practice is burdened by having loose papers and not a metal binder.  Doc. 53, pp. 10-11.

The First Amendment, made applicable to the States through the Fourteenth Amendment, "safeguards the free exercise of [one's] chosen form of religion."  Cantwell v. State of Connecticut, 310 U.S. 296, 303, 60 S. Ct. 900, 903, 84 L. Ed. 1213 (1940). While prisoners retain First Amendment rights, including the First Amendment right of free exercise of religion, *see* Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (*per curiam*), prison regulations or policies "alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."  O'Lone v. Estate of Shabazz, 482 U.S. 340, 349, 107 S. Ct. 2400, 2404, 96 L. Ed. 2d 282 (1987) (holding the Turner v. Safley standard of review applicable to free exercise claims brought by prison inmates).[5]  O'Lone continued the Court's admonition to give respect and deference to the judgment of prison administrators even in First Amendment challenges raised within the confines of prisons or jails.  482 U.S. at 350, 107 S.Ct. at 2405.  In O'Lone, the Supreme Court accepted that Jumu'ah attendance by Islamic inmates was "commanded by the Koran" and that their "sincerely held religious beliefs compelled attendance at Jumu'ah."  482 U.S. at 345, 107 S. Ct. at 2402.

---

[5] In City of Boerne v. Flores, 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 1997), the Court held that the Religious Freedom Restoration Act, (RFRA), 42 U.S.C. § 2000bb, *et seq.*, was unconstitutional as exceeding Congress's authority under the Constitution.  That decision returned to the standard of review employed in Employment Div., Dept. of Human Resources v. Smith, 494 U.S. 872 (1990), and in the context of prison cases, O'Lone v. Shabazz, *supra*.

In this case, it is accepted without dispute that Plaintiff wishes to engage in religious conduct compelled by her faith and that the Book of Shadows is central to that practice. However, this court must uphold prison regulations if they are "reasonably related to legitimate penological interests." O'Lone, 482 U.S. at 350, *using the standard of* Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). Accordingly, "[a] prison regulation, even though it infringes the inmate's constitutional rights, is an actionable constitutional violation only if the regulation is unreasonable." Hakim v. Hicks, 223 F.3d 1244, 1247 (11th Cir. 2000), *cert. denied*, 532 U.S. 932 (2001).

Inability to keep the papers constituting the Book of Shadows in a metal three-ring binder does not substantially burden Plaintiff's religion. The papers could be kept in a folder or envelope that does not have sharp metal components. Even if this were not possible, Plaintiff may still use the loose pages of the Book of Shadows for meditation and prayer. While it would be a convenience, a three-ring binder for the Book of Shadows is not essential or even necessary.

Furthermore, even if Plaintiff had shown a substantial burden, there is a legitimate security interest in forbidding possession of sharp metal objects in prison since those could be used as weapons. Thus, Plaintiff's First Amendment claim for use of a three-ring binder is without merit.

The equal protection is likewise without merit. An equal protection claim requires proof of a discriminatory intent or purpose. City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation, 538 U.S. 188, 194, 123 S.Ct. 1389, 1394, 155 L.Ed.2d 349 (2003), *quoting* Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (citing Washington v. Davis, 426

U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)); McCleskey v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987).  Here the evidence shows that although inmates in the Story Line program received the binder in question, it was based on a misunderstanding and there was no intent to treat inmates differently.  Once the problem was discovered, it was immediately corrected and those three-ring binders were confiscated.  Summary judgment should be granted in favor of the Defendants on the three-ring binder claims.

**Tarot Cards**

Defendants assert that the restriction of Plaintiff's use of Tarot cards to the Chapel does not substantially burden the practice of her religious faith.  Defendants are correct.  Plaintiff may use Tarot cards once a week in the Chapel library.  Plaintiff has not shown that the limitation on *where* she may use the cards substantially interferes with her religious practice.  Since this limitation does not substantially burden Plaintiff's religious exercise, summary judgment should be granted in Defendant's favor.  *See* Kaiser v. Shipman, 2009 WL 2423141, *8 (N.D. Fla., 2009) (Case 3:07cv229-LAC/EMT), *citing* Smith v. Allen, 502 F.3d 1255, 1277 (11th Cir. 2007) (abrogated on other grounds by Sossamon v. Texas, 131 S.Ct. 1651 (2011)).[6]

Furthermore, because there is no evidence that Plaintiff even *has* Tarot cards as none have been sent to the prison for her, this claim is premature.  Plaintiff has not been denied use of Tarot cards in religious practice.  She is simply limited as to when

---

[6] The Supreme Court concluded "that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver."  131 S.Ct. at 1663.

and where the cards may be used. On this record, summary judgment should be granted in Defendants' favor.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, doc. 53, be **GRANTED in part** on Plaintiff's claims concerning Tarot cards and three-ring binders, but that the motion be **DENIED** as to the argument that Plaintiff failed to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e) on her claims for Sabbat and Esbat and the scheduling of Wicca Holy Days for worship, and that the case be **REMANDED** for further proceedings as to that remaining claim.

**IN CHAMBERS** at Tallahassee, Florida, on November 1, 2011.

 S/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**